THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KYLE CHRISTOPHER BENTON, <br><br> Defendant. | No. CR24-162-TL <br><br> MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER <br><br> Note on Motion Calendar: October 7, 2024 <br><br> **Oral Argument Requested** |

Kyle Christopher Benton, through undersigned counsel, respectfully moves this Court to review the magistrate court's detention order pursuant to 18 U.S.C. § 3145(b). Mr. Benton further moves the Court, following its de novo review, to issue an order revoking the prior detention order and permitting Mr. Benton's release on conditions.

**I.     PROCEDURAL HISTORY**

Mr. Benton initially appeared in this district on September 6, 2024, following his arrest on a one-count complaint that alleged unlawful possession of a machinegun. Dkts. 1, 4. The government moved for detention, alleging that no conditions of release existed that would reasonably assure his future appearance and the safety of any other person and the community. Dkt. 6. Following a detention hearing, Judge Peterson issued an order detaining Mr. Benton based on a finding of dangerousness to the community; Judge Peterson also specifically found that "Mr. Benton does not pose a risk of nonappearance. He has strong family ties, stable employment, and stable

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

housing. Mr. Benton has limited criminal history." Dkt. 10 at 1–2. The government subsequently indicted Mr. Benton on two counts related to his alleged possession of a machinegun and a short-barreled unregistered firearm. Dkt. 11. The magistrate judge's detention order was continued post-indictment via a subsequent court order. Dkt. 13.

## II.     FACTUAL HISTORY

As confirmed in the supplemental Pretrial Services Report, Mr. Benton is a 28-year-old Army veteran who was discharged from duty in 2020. Although born in Las Vegas, Nevada, he has lived most of his life in Oregon and Washington. He has two young children with his partner. His partner and children rely upon his employment income, which is supplemented by the disability benefits he receives from his military service.

With the exception of travelling during his tour of duty for the military, Mr. Benton has not travelled internationally. He has a strong work history and is a self-described "workaholic" who has committed to spending more time with his family over the past year. He has worked in the pest control sector for some time now but has never been without a job for more than a few months.

Mr. Benton's medical and mental health history are accurately reflected in the Supplemental Pretrial Services Report.

Per the government's proffer at the detention hearing—which cited to a sealed search warrant affidavit—the government has observed and monitored Mr. Benton's social media posts for years. These posts include inflammatory language, and the government used the language from these posts in support of the argument that Mr. Benton was a danger to the community. The government also allegedly observed videos and posts showing Mr. Benton engaging in weapons training with others in the community, and used information made from its social media observations to conclude that Mr. Benton possessed a short-barreled rifle and/or a machinegun. Relying upon

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

these factors, and others, the government argued that Mr. Benton was a danger to the community.

## III. ARGUMENT

The District Court review of the magistrate judge's detention order is de novo. *United States v. Koenig*, 913 F.2d 1190, 1193 (9th Cir. 1990). The charges in this case do not carry the presumption of detention, and the government must prove dangerousness by a clear and convincing evidence standard. *See* 18 U.S.C. § 3142(e)(2), (e)(3), (f)(2).

Here, there are conditions that can be set to protect the community. Much of the government's focus at the detention hearing was on Mr. Benton's alleged past social media posts, which used racist and violent language. While these posts may be part of the Court consideration, they don't show a full picture of who Kyle Benton is. Mr. Benton, above all, is a devoted husband and father.

 

As Bayleigh, Mr. Benton's partner, details in her letter, Mr. Benton is the sole provider for their young family. Exhibit 7 (filed under seal). His continued detention

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  will have the consequence of financially destabilizing Bayleigh and their two children.
2  Already she has been struggling with the logistical and financial impact of his
3  incarceration on their small family. Mr. Benton's desire to go home primarily stems
4  from his goal of being able to take care of his family.

5    As detailed by Mr. Benton's therapist, Dr. Boyd, Mr. Benton suffers from mental
6  health issues that are complicated by childhood and combat-related trauma. Exhibit 6
7  (filed under seal). Mr. Benton is an Army veteran whose time and experience in the
8  military directly led to his diagnosis. Mr. Benton has been actively engaged in treatment
9  and medication management of his mental health issues. Since April of 2024,
10 Mr. Benton has completed 18 clinical therapy sessions with Dr. Boyd.

11   In arguing for detention, the government draws on posts allegedly made by
12 Mr. Benton that it was able to gather because it has been observing Mr. Benton, with
13 various degrees of scrutiny, for *years*. Notably, there is no allegation by the government
14 that Mr. Benton ever followed through on any of the hateful speech and rhetoric it has
15 identified.

16   Further, the government's surveillance of Mr. Benton also shows that, apart from
17 a brief resurgence of posts in August of 2024, Mr. Benton had mostly withdrawn from
18 posting racist and hateful language on social media; his posts had shifted largely to
19 focus more on objections to laws and regulations surrounding firearm ownership. This
20 withdrawal corresponds with his own work to lessen the symptoms of PTSD and to
21 distance himself from hate-aligned ideologies. Mr. Benton—like others—is continually
22 growing as a person. He has changed significantly from the person who he was, even if
23 he is not yet the person who he wishes to eventually be.

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

A close friend of Mr. Benton's, Avery, wrote a letter in support of Mr. Benton's release. Exhibit 1. Avery writes that they "feel safe around Kyle as a non-binary Native American with a colorful family." Not only does Avery consider Mr. Benton a "close friend" and part of their "found family," but they also feel comfortable with him around their children and partner, who is a transgender woman. As part of the families connecting, Mr. Benton and his family attended Snohomish Pride festival earlier this year with Avery and their family. The families also jointly traveled to Disneyland earlier in the year.

 

Avery also mentions that Mr. Benton is welcome to come live with them and their family, and that they would be willing to help Mr. Benton meet his obligations and to report any noncompliance while Mr. Benton is on supervision.[1]

---

[1] Magistrate Judge Peterson expressed concern about a screenshot from a video that allegedly showed Mr. Benton holding his nonmobile child in one arm and a firearm in the other. The government claims that Mr. Benton talks about his child looking to where the firearms are stored because "it is usually locked" but is open (presumably because he has retrieved the firearm). The firearm in the photograph is not a machinegun, nor does it appear to be an illegal firearm. While such a photo and description of a child being interested in firearms may be disturbing to those not

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

Mr. Benton's alleged words speak loudly—and the government spoke those into the record at the detention hearing. His actions speak louder. He has identified the problems with aligning himself with these hate-filled views and has worked hard to better himself for the sake of his family. Improvement is a process, but Mr. Benton was on a positive trajectory. This is a trajectory described for the Court by Mr. Benton's friends and family. *See* Exhibits 2, 3 (filed under seal), 4, 5 (filed under seal). Mr. Benton does not pose a threat to the community, and the government conceded at the detention hearing there was no evidence that he has made any sort of plan to hurt other people. *See* Exhibit 8 (filed in physical format) at 12:01–12:28 ("No, he has not articulated a particular plan, um, to do any, you know, specific act.").

Continuing Mr. Benton's detention also does not serve the community's interests because it prevents him from continuing his much-needed therapy, has interfered with his course of medication, and destabilizes his life and that of his family—reducing the likelihood that he will continue having a pro-social support structure when he eventually is released. The National Institute of Justice, an arm of the Department of Justice, recognized the importance of this family and peer support through its publication of the findings of a co-sponsored RAND Corporation study that identified approaches that had worked in deradicalization, including "deliberate exposure of radicalized individuals to positive contact with groups that were the targets of their hatred"—something Mr. Benton has been proactively engaging in over the past year. *See* "Domestic Radicalization and Deradicalization: Insights from Family and Friends," National Institute of Justice, August 19, 2022, avail at

---

invested in gun culture, there is simply nothing illegal or dangerous about the photograph or video. In fact, family photographs of very young children around and even holding firearms have been used as promotional material for United States politicians whose platforms include an embrace of the Second Amendment.

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

https://nij.ojp.gov/topics/articles/domestic-radicalization-and-deradicalization-insights-family-and-friends (last accessed September 24, 2024).

Given there is no concrete evidence—which must rise to a clear and convincing standard—to support the proposition that Mr. Benton is a danger to the community, there is no justification to detain Mr. Benton pre-trial.

The defense requests that the Court revoke the previous detention order and release Mr. Benton on the mandatory conditions as well as the following additional conditions:

1) A drug and alcohol testing condition
2) A mental health assessment and treatment condition
3) Restriction of travel to Washington State or as approved in advance by Pretrial Services
4) Surrender of passport and/or notice of lost passport
5) A prohibition on accessing social media or online messaging apps (besides text messages) while on supervision
6) Mr. Benton must live at and maintain an approved residence (the defense would ask that Mr. Benton be approved to live with Avery upon release)
7) Mr. Benton must maintain employment while on supervision
8) Mr. Benton must not possess firearms while on supervision

The defense believes that these conditions appropriately address any danger that Mr. Benton may pose in the instant case. As Judge Peterson correctly found, Mr. Benton does not pose a risk of nonappearance.

IV.   **CONCLUSION**

For the reasons stated above, the Court should revoke the magistrate judge's detention order and order Mr. Benton released on conditions. The defense respectfully

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 7

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

requests a hearing so it can further answer any questions or concerns the Court might have regarding the issue of Mr. Benton's release.

DATED this 24th day of September 2024.

Respectfully submitted,

s/ *Sara Brin*
s/ *J. Leonardo Costales*
Assistant Federal Public Defenders
Attorneys for Kyle C. Benton

I certify this motion contains 1,753 words in compliance with the Local Criminal Rules.

MOTION FOR REVIEW AND REVOCATION
OF DETENTION ORDER
(*U.S. v. Benton*, CR24-162-TL) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100