The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KYLE CHRISTOPHER BENTON,<br><br>Defendant. | NO. CR24-162 TL<br><br>**GOVERNMENT'S RESPONSE TO MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER** |

For years, Kyle Christopher Benton has successfully hidden from his family, colleagues, and select friends his engagement with groups espousing accelerationism and white supremacy and his advocating for others with similar views to carry out acts of violence to include homicidal violence. Evidence shows he engaged in this behavior while also arming himself with machineguns and short-barreled rifles. After considering the nature and circumstances of these offenses in conjunction with Benton's underground activities and his history and characteristics, Magistrate Judge Peterson concluded no condition or combination of conditions could reasonably address the danger to other persons or the community. The United States respectfully asks this Court to deny Benton's motion to revoke Magistrate Judge Michelle L. Peterson's well-founded order.

//

//

Government's Response to Motion for Review and
Revocation of Detention Order- 1
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. BACKGROUND

In 2019, Kyle Christopher Benton was arrested by the United States Army Criminal Investigation Division (CID) for domestic violence. CID's investigation of Benton included an investigation of his operation of social media accounts which contained anti-Semitic and neo-Nazi propaganda as well as violent extremist content. The investigation revealed Benton had been communicating with another about the idea of killing a homeless person to see how it would feel. The person he communicated with revealed Benton was a member of several extremist groups, including O9A[1], and that he actively recruited soldiers to join such groups. A solider interviewed during the investigation revealed Benton had expressed admiration for murderers such as Brenton Tarrant, a white supremacist who killed 51 people and injured another 89 in a shooting in Christchurch, New Zealand in 2019. Benton's domestic violence victim told investigators Benton said he wanted to shoot up the "alphabet boys," a reference to federal law enforcement agencies, or a local police station.

An FBI investigation of Benton involved the review of numerous social media accounts linked to Benton. In many posts, Benton displayed iconography and ideology in support of accelerationism, a white supremacist belief in violent action to precipitate societal and governmental collapse with an attendant race war. The investigation showed Benton's engagement in this sphere for years.

In 2021, Benton told a confidential human source that he supported the Butler Plan, which has, at its core, the creation of a white ethno-state in the Pacific Northwest. Benton further reported to the source that he viewed himself as a leader and unifier of white supremacists and alt-right groups and that he wanted to recruit more individuals into his group.

In 2022, on the day after the Tops supermarket shooting, where a white gunman murdered ten African Americans in Buffalo in a racially motivated shooting, Benton wrote a private Instagram message, "Today has been another glorious entry into the

---

[1] O9A (Order of Nine Angles) is an occult-based, neo-Nazi, and white supremacist group.

Government's Response to Motion for Review and  
Revocation of Detention Order- 2  
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

annals of Aryan Terror. The harder the jew system presses back, the more the Aryan Will shall be unleased to wreak havoc and death upon the hordes of our racial and spiritual adversaries. Welcome the coming pressure with the knowledge that these occurrences will only become more frequent, violent, and effective. Hail the Bloodshed Hail Hatred Hail the Everlasting spirit of Adolf Hitler."

Also in 2022, investigators spoke with one of Benton's family members, who said Benton regularly spoke about how Jews and African Americans needed to be killed. The family member was also aware that Benton and his associates trained together in the woods frequently and that another training event was upcoming.

Further investigation revealed Benton was associated with Terrorgram, a network of Telegram channels prompting neo-fascist ideology, which has also created manuals on how to carry out acts of racially-motivated violence. Terrorgram released a documentary extolling the attacks of so-called "saints." The term "saint" is used by the group, and other groups which subscribe to a similar ideology, to refer to murderers who satisfy five criteria:

(1) being of the so-called white race;

(2) possessing motive to kill those who threaten the white race;

(3) sharing the worldview of white supremacy;

(4) conducting a deliberate attack; and

(5) killing at least one person in said attack.

During the course of the investigation, the FBI learned Benton was in possession of various firearms, including a machinegun, at his residence where he resided with his young children, all in violation of the National Firearms Act.

In August of 2024, an FBI undercover employee observed a posting by a Benton-linked social media account about encouraging others to commit acts of violence in order to become a "saint." Specifically, account posted, "Going into random chats and hyping up saints might get some weirdo to become a saint because he knows people will love him."

Government's Response to Motion for Review and
Revocation of Detention Order- 3
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Later, the same Benton-associated account posted an image of white supremacist Dylann Roof, who murdered nine and injured another at the Emanuel African Methodist Episcopal Church and captioned the image "Saint Roof mentioned." The Roof image was posted in a forum with approximately 130 members, and which is known to promote racist, anti-Semitic, and white supremacist content. The Benton-associated account went on to comment, "I f**king love the saints," "Everyone loves saints and any lurkers in this chat, know that once you become a saint you will be in the annuls of time forever as a hero. You're already hated for being White, and they'll still hate you for being a White warrior. May as well gain the love and adoration of millions of awakened Whites across the world. Hall the Saints!" and, finally, "Any sin of the past is instantly washed clean with the blood of our enemies."

Around the time Benton was, in his words, "hyping up" people to become "saints," a video showing a man, who investigators recognized as Benton, was posted on a Benton-associated social media account showing a rifle being fired as a fully automatic firearm. A still of this video is pasted below.



Government's Response to Motion for Review and
Revocation of Detention Order- 4
United States v. Benton, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On September 6, 2024, federal agents served a search warrant at Benton's residence, where he lived with his two young children and the mother of his children. Agents recovered multiple firearms, which were found unsecured in a closet. One of the firearms had a loaded magazine affixed to it. Another firearm had a loaded magazine affixed to it and had a round in the chamber.

## II.     PROCEDURAL POSTURE

On September 6, 2024, the government filed a complaint charging Benton with *Unlawful Possession of a Machinegun*. Dkt. 1. The same day, the government moved to detain Benton pending trial at his initial appearance. Dkt. 6. The Court set a detention hearing for September 10, 2024. Dkt. 4.

At the detention hearing, Judge Peterson concluded Benton does not pose a risk of nonappearance, but that he poses a risk of danger due to the nature of the offense. Dkt. 10. Judge Peterson further concluded that he poses "a unique danger to minority communities given the allegations of radicalization coupled with the allegations of possession of a machine gun." *Id*. After considering whether any condition or combination of conditions could reasonably assure Benton's appearance at future court hearings while addressing the danger to other persons or the community, Judge Peterson concluded no condition or combination of conditions could do so. *Id*.

On September 19, 2024, a grand jury returned a two-count indictment charging Benton with *Unlawful Possession of a Machinegun*, in violation of Title 18, United States Code, Section 922(o), and *Possession of an Unregistered Firearm*, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(3). Dkt. 11. On the same date, Magistrate Judge Brian A. Tsuchida entered an order continuing Benton's detention. Dkt. 13.

//
//
//

Government's Response to Motion for Review and
Revocation of Detention Order- 5
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III. LEGAL STANDARD

Title 18, United States Code, Section 3145(b) permits the defendant to seek review of a detention order. If a review is undertaken, the district court must conduct a *de novo* review of the detention order, and it need not give deference to the factual findings or the ultimate conclusion of the Magistrate Judge. *See United States v. Koenig*, 912 F.2d 1990, 1191-92 (9th Cir. 1990). However, the Ninth Circuit has made clear that the precise nature of the review in each case is left to the sound discretion of the district court. *Id.* ("Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."). Moreover, the decision as to whether to hold oral argument is left to the district court's discretion. *Id.* ("If the performance of that function makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so. . .").

The key question in the detention analysis in this case is whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community. 18 U.S.C. § 3142(f). The standards of proof differ with respect to the "risk of flight" and "dangerousness" prongs of the statute. A detention order based on the defendant's risk of flight ordinarily must be supported by only a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A detention order based on the defendant's dangerousness generally must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The Court must evaluate several enumerated statutory factors to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. . ." 18 U.S.C. § 3142(g). These factors include:

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

Government's Response to Motion for Review and
Revocation of Detention Order- 6
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.*

## IV.     ARGUMENT

As Magistrate Judge Peterson correctly concluded, the factors set forth in the Bail Reform Act favor Benton's detention.

*Nature and Circumstances of the Offenses*

The unlawful possession of a machinegun and the possession of an unregistered firearm by an individual holding accelerationist views who recently encouraged others to commit acts of violence is obviously of great concern.

Inside Benton's residence, agents found multiple firearms possessed in violation of the National Firearms Act. In particular, they found a black M16 type rifle, which function tested as a machinegun. This rifle appears to be the firearm that investigators saw on Benton-associated social media accounts in 2024. They also found what appears to be an uninstalled drop-in auto sear, which allows an individual to build a functional machinegun from a standard rifle, and which on its own constitutes a machinegun under federal law even when uninstalled. Additionally, investigators located two other rifles with barrel lengths of less than 16 inches. One of these short barrel rifles appears to have been the rifle Benton displayed more than once on social media accounts linked to him. Moreover, the weapons were found in an unsecured closet, and two of the rifles were found loaded and one even had a round chambered. The possession of a machinegun, which has the capacity to fire round after round with a single trigger pull, is concerning

Government's Response to Motion for Review and
Revocation of Detention Order- 7
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

on its own, but the possession of such a dangerous weapon by an individual who encouraged others to engage in homicidal violence is extremely concerning.

Here, the nature and circumstances of the offenses warrant continued detention.

*The Weight of the Evidence Against the Person*

The evidence against Benton is considerable. First, the machinegun and unregistered rifles were seized pursuant to a search warrant authorized by United States Magistrate Judge S. Kate Vaughan. Second, the firearms were found inside Benton's residence. Finally, the firearms visually match images of firearms posted to Benton-associated social media accounts leading up to the execution of the search warrant. The weight of the evidence is strong and supports detention.

*History and Characteristics of the Person*

As with the nature and circumstances of the offense, Benton's history and characteristics also favor continued detention.

In support of his motion, Benton offers letters of support from his family, former colleagues, and select friends, who attest to his work history, work ethic, and commitment to his friends and family. From these letters it is clear Benton successfully kept considerable aspects of his life compartmentalized and away from people. The investigation here shows that since at least 2020 Benton has been engaged with individuals and groups advocating for violence based on race and/or ethnicity. Not only has he been engaging with such groups he reported to others that he has been involved in recruiting others to join these groups. Moreover, he reported to others he views himself as a uniter of various white supremacist and alt-right groups. Although in his motion he suggests he was on a positive trajectory of change and that he had mostly withdrawn from posting racists and hateful language on social media, his recent postings show the opposite.

In August of 2024, investigators observed a Telegram account associated with Benton posted about his activity to inspire action. In that Telegram channel he wrote, "Going into random chats and hyping up saints might get some weirdo to become a saint because he knows people will love him."

Government's Response to Motion for Review and
Revocation of Detention Order- 8
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The same account then posted in another Telegram chat encouraging acts of homicidal violence. The account posted, "Everyone loves saints and any lurkers in this chat, know that once you become a saint you will be in the annuls of time forever as a hero. You're already hated for being White, and they'll still hate you for being a White warrior. May as well gain the love and adoration of millions of awakened Whites across the world. Hall the Saints!" As noted previously, the term "saint" in this community is reserved for individuals who kill at least one person in a deliberate attack in furtherance of a white supremacist worldview. Benton's solicitation to commit a crime of violence as recently as August of 2024 is of considerable concern for the safety of persons in the community, particularly minorities communities.

Furthermore, while Benton has not committed acts of violence recently,[2] the August 2024 postings demonstrate a different sort of danger: the solicitation of others to carry out crimes of violence. For an individual like Benton, who is a self-described leader and unifier of others operating in this community, his encouragement of others to carry out acts of violence in furtherance of his worldview is of particular concern because he has the ability to inspire and galvanize others to act on his words.

Benton's mental health history further factors into the government's concerns and supports Benton's continued detention. Both the Pretrial Services report and Benton's letters of support demonstrate he has a history of mental health issues. Benton's longstanding operation in these communities espousing accelerationism and violence in supporting white supremacy coupled with his mental health history[3] gives the government further concern for the safety of persons should he be released. While in custody, Benton has access to psychological services and therapeutic interventions, including medication-based treatment, which he can access to continue addressing his mental health issues.

---

[2] Although not convicted of any crime, Benton has been arrested for domestic violence previously.
[3] To protect the privacy of Benton's health history, the government is refraining from identifying all relevant mental health history and instead identifies specifically the contents of the section titled "Mental Health" on page 3 of the Pretrial Services supplemental report, dated September 10, 2024.

Government's Response to Motion for Review and
Revocation of Detention Order- 9
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Like the nature and circumstances of the offenses, Benton's history and characteristics weigh in favor of his continued detention.

*Nature and Seriousness of the Danger to any Person or the Community*

When considered in the totality, the facts of this case show Benton poses a serious danger to persons and the community as a whole should he be released.

Benton's longstanding operation with groups advancing accelerationism and violence predicated on race and ethnicity coupled with his possession of the means to carry out violence and his recent encouragement of others to attain "sainthood" all presents a considerable danger to individuals and the community as a whole. While Benton's supporters extoll his virtues, it is clear Benton has carried out his work with these groups for years and that he has done so in the shadows and out of the view of others who do not carry the same worldview. His release puts members of the community at risk.

Each of the factors set forth in the Bail Reform Act support Benton's continued detention and no condition or combination of conditions can reasonably address the danger to other persons or the community. As such, the Court should deny Benton's motion to revoke the detention order in this case.

//
//
//

Government's Response to Motion for Review and
Revocation of Detention Order- 10
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.    **CONCLUSION**

For the reasons set forth above, the government respectfully requests the Court deny Benton's motion to revoke the detention order in this case.

DATED this 1st day of October, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Brian Wynne*
BRIAN J. WYNNE
Assistant United States Attorney
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, WA 98101-3903
Telephone: 206-553-2268
Fax: 206-553-4986
E-mail: Brian.Wynne@usdoj.gov

I certify that this pleading contains 2819 words, in compliance with the Local Criminal Rules.

Government's Response to Motion for Review and
Revocation of Detention Order- 11
*United States v. Benton*, CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970