The Honorable Tana Lin

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> KYLE CHRISTOPHER BENTON, <br><br> Defendant. | NO. CR24-162 TL <br><br> GOVERNMENT'S SENTENCING MEMORANDUM <br><br> Sentencing: July 16, 2025, at 11:00 a.m. |

    Kyle Christopher Benton unlawfully possessed extremely dangerous weapons capable of causing considerable harm. He possessed both unregistered, short barrel rifles and machineguns, weapons capable of firing multiple rounds with a single trigger pull. Moreover, he used these weapons to further his standing with various racially or ethnically motivated violent extremist groups and groups espousing white supremacy. For his conduct, the government respectfully joins United States Probation in recommending a sentence of 30 months of imprisonment followed by three years of supervised release with the conditions recommended by United States Probation.

Government's Sentencing Memorandum - 1
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I. FACTUAL BACKGROUND

The Federal Bureau of Investigation initiated its investigation of Kyle Christopher Benton when he was discharged from the United States Army after he threatened to kill his wife and after it was learned he operated multiple social media accounts where he posted violent extremist content, neo-Nazi propaganda, and anti-Semitic materials. Presentence Investigation Report ("PSR") ¶¶ 11, 71.

After his discharge from the Army, Benton moved to Oregon where he engaged for years with other like-minded individuals in support of neo-Nazism and accelerationism, a white supremacist belief in violent action to precipitate governmental and societal collapse with an attendant race war. *Id*. ¶ 48. During this time, he participated in "hate rallies" and other gatherings located in Oregon, Washington, and Idaho in furtherance of his white supremacist and accelerationist views. *Id*. Drawing upon his military training and veteran status, he led workshops about firearms for various white supremacy groups. *Id*. Benton would be gone for weeks at a time attending these gatherings and leading trainings. *Id*.

Investigators identified additional social media accounts Benton operated, where he posted images and videos of various firearms he possessed, including firearms required to be registered under the National Firearms Act (NFA), including machineguns and short-barreled rifles. *Id*. ¶ 12. In August of 2024, Benton posted about his plan to attend a range shooting event. *Id*. ¶ 13. While doing so, he noted, "I hope they like NFA violations." *Id*. He later posted a video showing himself firing a weapon in fully automatic capacity. *Id*. A still of a video showing Benton firing one of his rifles as a machinegun is pasted here.

Government's Sentencing Memorandum - 2
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Benton also used his social media accounts to post his support of white supremacist goals and communicated on such topics as his support of the Butler Plan, which has, at its core, the creation of a white ethno-state in the Pacific Northwest and his support and encouragement of racially motivated violence. Images of Benton from this time are pasted here.





Government's Sentencing Memorandum - 3
United States v. Benton – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  On September 6, 2024, investigators served a search warrant at Benton's residence. *Id*. ¶ 15. Inside Benton's residence, investigators found a black M16-type rifle, which investigators determined fired as a machinegun; an uninstalled drop-in auto sear[1]; and two rifles with overall barrel lengths of less than 16 inches, which are required to be registered under the NFA. *Id*. ¶¶ 15-16. None of these firearms were registered with the National Firearms Registration and Transfer Record. *Id*. An image of the firearms seized from Benton's residence are pasted here.



//
//

---

[1] A drop-in auto sear is a device that can be installed in a rifle to make the rifle discharge multiple rounds with a single trigger pull. A drop-in auto sear is a machinegun pursuant to Title 26, United States Code, Section 845(b), even when uninstalled.

Government's Sentencing Memorandum - 4
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. PROCEDURAL HISTORY

On September 6, 2024, Benton was charged by complaint with one count of Unlawful Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o). Dkt. 1. Benton made his initial appearance the same day. Dkt. 4.

On September 19, 2024, the grand jury returned a two-count indictment charging Benton with Unlawful Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o) and Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Section 5861(d) and 5845(a)(3). Dkt. 11.

On March 28, 2025, Benton entered pleas of guilty to Unlawful Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o) and Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(3). Dkt. 43.

## III. STATUTORY PENALTIES

The offense of Unlawful Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o), is punishable by a maximum term of imprisonment of ten years, a fine of up to $250,000, not more than three years of supervised release, and a mandatory special assessment of one hundred dollars. PSR ¶¶ 75, 78, 83, 84.

The offense of Possession of an Unregistered Firearm, in violation of Title 26, United States Code, Sections 5861(d) and 5845(a)(3), is punishable by a maximum term of imprisonment of ten years, a fine of up to $10,000, not more than three years of supervised release, and a mandatory special assessment of one hundred dollars. *Id*. ¶¶ 75, 78, 83, 84.

## IV. SENTENCING GUIDELINES CALCULATION

The government agrees with United States Probation's criminal history computation. Benton's criminal history score is zero. PSR ¶ 35. With a criminal history score of zero, Benton's Criminal History Category is I. *Id*.

Government's Sentencing Memorandum - 5
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Benton's Base Offense Level for Unlawful Possession of a Machinegun group is 18. *Id.* ¶ 23. The parties agree a two-point increase under U.S.S.G. §2K2.1(b)(1)(A) applies because more than three, but less than seven firearms were involved. Because Benton demonstrated acceptance of responsibility and provided timely notification to the government of his intent to enter pleas of guilty, he should receive a three-level decrease. *Id.* ¶¶ 30-31. As such, Benton's total offense level is 17, making his Sentencing Guidelines range 24 to 30 months of imprisonment. *Id.* ¶ 76.

## V.    FACTORS RELATED TO SENTENCING RECOMMENDATION

In sentencing the defendant, the Court considers not only the advisory sentencing range calculated under the United States Sentencing Guidelines, but also the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records.

## VI.    GOVERNMENT'S SENTENCING RECOMMENDATION

After weighing the section 3553(a) factors, the government respectfully joins United States Probation in recommending a sentence of 30 months of imprisonment to be followed by three years of supervised release. The recommended sentence is sufficient but not greater than necessary to carry out the goals of sentencing.

Government's Sentencing Memorandum - 6
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. *Nature and Circumstance of the Offenses*

Benton's possession of machineguns and unregistered, short-barreled rifles is undeniably serious. After a lengthy investigation of Benton, which included reviewing social media accounts where Benton frequently posted about his weapons and referenced his antipathy for the NFA, investigators served a search warrant at his apartment. Inside his residence, where Benton lived with two minor children, investigators found a black M16 type rifle. Investigators determined the rifle had been modified to function as a machinegun. The M16 type rifle appeared to be the same rifle investigators observed Benton posted images of on social media accounts he operated.

Investigators also found an uninstalled drop-in auto sear, which is highly portable and allows a user to quickly fashion a functioning machinegun from a standard rifle, and which on its own constitutes a machinegun under federal law even when uninstalled. Additionally, investigators located two other rifles with barrel lengths of less than 16 inches. Each of these weapons were capable of causing considerable harm from both intentional and unintentional discharge, thereby placing others at risk by his possession of these weapons. Additionally, Benton handled at least one of the firearms in an incredibly reckless fashion by pointing it at his child. *See* Exhibit A (sealed).

Moreover, while Benton was in possession of these weapons, he was actively engaged with groups encouraging racially or ethnically motivated violence and white supremacy. Benton used the firearms along with his military experience to establish himself within the groups. While engaged with these groups he put on workshops about firearms and held tactical trainings for group members. An image of Benton facilitated training is pasted here.

Government's Sentencing Memorandum - 7
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



His acts of taking on roles putting on firearms workshops and tactical trainings is particularly concerning because his doing so means he held some stature and possessed credibility within the groups, This stature could result in others emulating him and his actions or following his directions. This is particularly concerning given some of Benton's postings within these groups.[2]

Benton also flaunted his violations of law, thereby demonstrating an utter lack of respect for law. In August of 2024, he participated in a shooting event with veterans whom he did not know and had only met online.[3] Prior to this event, Benton posted on a social media account, "I hope they like NFA violations" telegraphing his intent to display

---

[2] In August of 2024, Benton communicated on Terrorgram-related channels that he was "[g]oing into random chats and hyping up saints might get some weirdo to become a saint because he knows people will love him." In another communication, Benton wrote, "[e]veryone loves saints and any lurkers in this chat, know that once you become a saint you will be in the annuls of time forever as a hero. You're already hated for being White, and they'll still hate you for being a White warrior. May as well gain the love and adoration of millions of awakened Whites across the world. Hall the Saints!" The term "saint" as used by the group, and other groups which subscribe to a similar ideology, refers to murderers who satisfy five criteria: (1) being of the so-called white race; (2) possessing motive to kill those who threaten the white race; (3) sharing the worldview of white supremacy; (4) conducting a deliberate attack; and (5) killing at least one person in said attack.

[3] This shooting event was unrelated to previously described groups.

Government's Sentencing Memorandum - 8
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  his unlawfully possessed weaponry to strangers at the event. Below is a photograph of
2  Benton holding one of his unregistered, short barrel rifles at the event.



12        The nature and circumstances of Benton's possession of the these extremely
13  dangerous firearms when considered in their totality weigh in favor of the recommended
14  sentence.

15                b.      *History and Characteristics of the Defendant*

16        The circumstances of Benton's youth provide some mitigation, but the entirety of
17  his history and characteristics support the recommended sentence.
18        Benton was raised in a family of six, with two half-siblings and one full sibling.
19  PSR ¶ 40. He recalls his life circumstances has a child as being difficult. He reports being
20  picked upon, his parents being separated, his moving from his mother's home to his
21  father's, and his father being abusive and engaged in criminal activity. *Id*. ¶¶ 41-44. He
22  also reports his parents are habitual liars, which undoubtedly informed the environment
23  he was raised in and the stories he was told. *Id*. ¶ 43.
24        At age 15, he moved back in with his mother. *Id*. ¶ 45. Although he had a difficult
25  relationship with his stepfather, he was engaged in school, was active in sports, and had a
26  good group of friends. *Id*. He reports leaving school his senior year after a fight with his
27

Government's Sentencing Memorandum - 9
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

stepfather, which resulted in Benton leaving home. *Id*. ¶ 46.

Shortly after Benton's grandfather, with whom he was close, died, Benton joined the United States Army. *Id*. ¶ 47. In doing so, he followed in his grandfather's footsteps. *Id*. He served in the military, which included a deployment to East Africa. However, his military career ended after his then wife accused him of trying to kill her. *Id*. It was during this time that Benton began engaging with others on the subjects of violent extremism, neo-Nazism, white supremacy, and antisemitism. *Id*. As noted above, his military and firearms training would prove valuable to him in this sphere.

When investigators with United States Army Criminal Investigation Division investigated Benton for domestic violence, they learned Benton was a member of several extremist groups, including O9A[4], and that he actively recruited soldiers to join such groups. A solider interviewed during the investigation revealed Benton had expressed admiration for individuals who carried out active of racially or ethnically motivated acts of violence.

Benton's involvement with groups advocating racially and ethnically motivated extremist causes continued after his discharge from the military and even after the birth of his children. *Id*. ¶ 48.

While Benton claims he abandoned his participation in these activities, he also acknowledges that in 2024 he reengaged with these groups. *Id*. ¶ 49. Furthermore, he resumed his activities with these groups online. *Id*.

So, while the circumstances of Benton's youth provide some mitigation, when his history and characteristics as a whole are considered, this factor supports the recommended sentence.

//

---

[4] O9A (Order of Nine Angles) is an occult-based, neo-Nazi, and white supremacist group.

Government's Sentencing Memorandum - 10
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    c. *<u>The Need to Protect the Community, Afford Deterrence, and Promote Respect for the Law</u>*

The jointly recommended sentence of the government and United States Probation protects the community, affords deterrence to Benton and others, and promotes respect for the law.

A sentence of 30 months will have a deterrent effect on Benton, communicating to him the seriousness of his actions and the attendant consequences of those actions. The recommended sentence will also promote in Benton respect for the law, which his actions show he had little respect for. The recommended period of incarceration will protect the community while Benton is in custody and, ideally, after he is released, because of the deterrent effect on him. The recommended sentence will further have a deterrent effect on others engaged in criminal activities of this sort.

    d. *<u>The Need to Provide the Defendant with Treatment in the Most Effective Manner</u>*

The recommended sentence of the government and United States Probation further affords Benton opportunities to engage with rehabilitative service to enhance his reengagement with society.

Although substance use disorder did not appear to play any role in this case, Benton acknowledges his prior struggles with alcohol use. PSR ¶ 64. During his period of incarceration, Benton will be able to address any latent issues related to this disorder. Moreover, while on supervised release, Benton will have access to resources to help him address residual issues from his youth. He will also be able to address his mental health issues with the support and structure of a probation officer. Addressing these issues during his term of supervised release will help him to reintegrate into society and engage in a lawful, pro-social fashion.

  //

Government's Sentencing Memorandum - 11
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VII. CONCLUSION

Benton unlawfully possessed extremely dangerous weapons capable of causing considerable harm. After considering the nature of these offenses, including how he used these firearms, his history and characteristics, and the other 18 U.S.C. § 3553(a) factors, the government respectfully joins United States Probation in recommending a sentence of 30 months of imprisonment followed by three years of supervised release with the conditions recommended by United States Probation.

DATED this 9th day of July, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*s/ Brian J. Wynne*
BRIAN J. WYNNE
Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-2268
Fax:              (206) 553-4659
E-mail:         Brian.Wynne@usdoj.gov

Government's Sentencing Memorandum - 12
*United States v. Benton* – CR24-162 TL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970